IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DAVID JOHN, M.D., INC., | Case No. 20-cv-00049-DKW-RT |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE** |
| vs. | |
| ROBERT A. POLISKY, | |
| Defendants. | |

This case presents the question of whether personal jurisdiction exists over a nonresident attorney licensed in another jurisdiction when he has allegedly conspired with forum residents to fabricate a contract so as to impose myriad obligations on a corporation that is a purported client in the forum state. Because the intentional, tortious conduct alleged was "purposefully directed" at Hawaii and allegedly caused substantial harm in Hawaii, this Court has specific personal jurisdiction over Defendant Robert A. Polisky. Accordingly, Polisky's motion to dismiss for lack of personal jurisdiction and improper venue, Dkt. No. 6, is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    The Parties

Plaintiff David John, M.D., Inc. (DJI) is a Hawaii corporation and, at all relevant times, was engaged in business in Hawaii. The President of DJI is David John, M.D. Dkt. No. 1-2, ¶ 1; Dkt. No. 21-2, ¶ 1.

Between 2014 and most of 2016, Dr. John was a resident of Hawaii serving as an associate clinical professor at the University of Hawaii Medical School and operating a medical practice in Honolulu, Hawaii.  *See* Dkt. No. 21-2, ¶¶ 2–3, 30; Dkt. No. 1-2, ¶¶ 37–38.  Dr. John is currently a clinical associate professor at the University of Missouri-Kansas City, Dkt. No. 6-7, and DJI's registered mailing address is now in Kansas City, Missouri, Dkt. No. 6-6.  *See* Dkt. No. 6-4, ¶¶ 18–19.

Defendant Robert A. Polisky is a solo-practicing attorney "domiciled in California."  Dkt. No. 1, ¶ 3; Dkt. No. 6-4, ¶ 1; Dkt. No. 1-2, ¶ 2.  Polisky is not licensed to practice law in Hawaii; he does "not have any active clients" in Hawaii; he "has never taken any act to solicit" business in Hawaii; he has "never advertised" or "marketed" legal services in Hawaii; he does "not have any offices, employees, residences, facilities, mailing addresses, telephone listings, or bank accounts" in Hawaii; and he has "never owned or leased property" in Hawaii.  Dkt. No. 6-4, ¶¶ 4, 10–11, 13.

### B.     Polisky Provided Legal Services and Allegedly Fabricated a Counterfeit LLC Agreement While in California

In 2015, Dr. Heath Chung and Dr. Deryll Ambrocio approached Dr. John and proposed the idea of forming a five-member medical group: Oahu Medical Group, LLC (the "Oahu Group").  Dkt. No. 21-2 at ¶ 4; Dkt. No. 1-2, ¶¶ 5, 15.  The plan was to organize the Oahu Group under the laws of Hawaii and provide medical services solely within Hawaii.  Dkt. No. 1-2, ¶ 7.  The five prospective members,

including DJI, were all Hawaii entities with their principal place of business in Hawaii. *See* Dkt. No. 21-12 at 2; Dkt. No. 1-2, ¶ 6.

Tanya Florin, the wife of Dr. Chung, knew of an attorney (Polisky) who had set up similar practices for Hawaii physicians. Dkt. No. 21-2, ¶ 5. It is uncontested that on March 31, 2015, Florin sent an e-mail to Polisky requesting his services in establishing the Oahu Group, and in particular, Polisky's counsel regarding the federal Physician Self-Referral law (Stark Law). Dkt. No. 21-3 at 2; Dkt. No. 21-2, ¶ 6; Dkt. No. 6-4, ¶ 4; Dkt. No. 1-2, ¶ 17. On April 6, 2015, Florin executed Polisky's retainer letter and Terms of Engagement. Dkt. No. 6-5; Dkt. No. 6-4, ¶ 5. In bold lettering, the Terms of Engagement stated: "Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, and parent companies, are not clients, unless we otherwise agree in writing." Dkt. No. 6-5 at 3.

In assisting with the formation of the Oahu Group, Polisky performed various legal services from his office in California, including preparing a draft LLC Agreement; allegedly fabricating and back-dating a "counterfeit" LLC Agreement; negotiating and revising the terms of a sublease for the medical clinic; preparing the required filings for the State of Hawaii; advising the individual members regarding the details of the LLC partnership; and engaging in multiple written and oral communications with Dr. John regarding the startup of the Oahu Group. *See* Dkt. No. 1-2, ¶¶ 8–9, 39–47; *see also* Dkt. No. 6-4, ¶¶ 15–17; Dkt. No. 21-12 at 2. Polisky

did not travel to Hawaii in the course of providing legal services to the Oahu Group. Dkt. No. 6-4, ¶ 8.

### 1.    The Legal Services Provided by Polisky

On April 27, 2015, Polisky sent a 12-page memorandum to Florin, Dkt. No. 21-19, in which Polisky explained various legal issues involved with forming the Oahu Group.  Dkt. No. 6-4, ¶ 14; Dkt. No. 21-2, ¶ 7; Dkt. No. 1-2, ¶ 19.  As the Oahu Group members contemplated subleasing an office space, on June 22, 2015, Polisky provided legal advice in an e-mail to the five prospective members and copied Florin as a recipient.  Dkt. No. 21-5; Dkt. No. 21-2, ¶ 8.  Dr. John responded to the group e-mail that he was willing to sign the sublease but "may well wish to retire . . . within the next 7 years" and, thus, requested "reassurance" that, upon six months' notice, "any of us can be released from the lease."  Dkt. No. 21-7; Dkt. No. 21-2, ¶ 12.  To address Dr. John's concern, Polisky replied to the group e-mail, "Your ability to get out of the sublease is addressed in the following language," and Polisky quoted the relevant paragraph of the sublease.  Dkt. No. 21-8 at 1.  Dr. John, on behalf of DJI, then signed the sublease for the Oahu Group's office space.  Dkt. No. 21-2, ¶ 14.  Around this time, Polisky also allegedly advised Dr. John regarding DJI breaking its then-existing office space lease, which was necessary before DJI could enter into a new partnership and lease.  Dkt. No. 21-2, ¶ 21.  According to Dr.

John, he did not know that Polisky was not licensed to practice law in Hawaii.  Dkt. No. 21-2, ¶ 32.

In August 2015, Polisky filled out the form entitled, "Articles of Organization for Limited Liability Company," Dkt. No. 21-10; Dkt. No. 21-2, ¶ 16, a task Polisky claims "took less than fifteen minutes to complete."  Dkt. No. 6-4, ¶ 16.  It is undisputed that Dr. John signed the form as the organizer, and Dr. John filed the form with the Hawaii Department of Commerce and Consumer Affairs.  Dkt. No. 21-2, ¶ 16; Dkt. No. 21-10; Dkt. No. 1-2, ¶ 32; Dkt. No. 6-4, ¶ 17.   On August 9, 2015, Polisky sent an e-mail to the Oahu Group members, which states *inter alia*, "[a]ttached for your review is a draft LLC Agreement" and a "draft Resignation of Organizer," Dkt. No. 21-9.  *See also* Dkt. No. 21-2, ¶ 15.  On September 1, 2015, the Oahu Group opened for business, allegedly without an executed LLC Agreement.  Dkt. No. 1-2, ¶ 34.

### 2.    The "Counterfeit" LLC Agreement

In July 2016, Dr. John was offered a teaching position at the University of Missouri Medical School and accordingly notified the other members of the Oahu Group that he would be withdrawing from the partnership arrangement within six months.  *Id.* at ¶¶ 37–38.  At this point, the LLC Agreement still had not been finalized or executed.  *See id.* at ¶¶ 34–37.  In fact, on August 3, 2016, Dr. Chung sent an e-mail to Polisky stating, "We are looking for the signed copies of the LLC

agreement and now we think that not all of us signed it, the most important one, David [Dr. John], who is leaving, we don't think signed or turned it in.  We will be checking at the office."  Dkt. No. 21-11.  Sometime thereafter, Polisky asked Dr. Chung for "signature pages," Dkt. No. 21-20 at 96–97, and on August 6, 2016, Dr. Chung stated in an e-mail to Polisky, "Here are the scanned signature pages."  *Id.* at 98, 100, 127–28; Dkt. No. 1-2, ¶ 41.

On August 14, 2016, Polisky copied Florin on an e-mail he sent to all the Oahu Group members, except for Dr. John.  Dkt. No. 21-24.  In the e-mail, Polisky stated, in relevant part:

> Attached is an executed copy of the LLC Agreement for [the Oahu Group], which includes an execution version header and dates inserted in the blank spaces and is based on the attached word version from August 9, 2015.  Please forward the initial time block schedule to me *so that I can add that to the executed copy*.

Dkt. No. 21-24 at 1 (emphasis added).  Polisky then provided several bullet points of information, including *inter alia*, that:

- DJI cannot withdraw from the Oahu Group, and, should this occur, DJI would be liable to the Oahu Group and its members for damages;

- DJI is obligated to pay for proportionate expenses based on the time block schedule; and

- If DJI and Dr. John wish to be released from the sublease and guaranty, respectively, it is "his responsibility, not yours" to find a replacement.

*See id.* at 2.  Polisky concluded by noting, "The above bullets should provide you sufficient leverage for David [Dr. John] to work cooperatively with all of you to

ensure that he either continues paying a proportionate amount for [the Oahu Group]'s expenses or that he finds a replacement physician to do so."  *Id.*

At 1:59 AM, on August 16, 2016, Dr. Chung sent an e-mail to Polisky (again, copying all the members except Dr. John).  In the e-mail, Dr. Chung wrote, "Please find attached the [*sic*] block schedule for our office."  Dkt. No. 21-14 at 1.  Dr. Chung continued:

> We're hoping to meet with David [Dr. John] sometime in the near future/later this week to bring up some of the points that you listed . . . We are hoping that this will be a cordial discussion as we were all aware of the risks we were taking as a group to form this company as well as the obligations we would have to each other. I believe that he may have forgotten some of these things we discussed and do not suspect that he is doing this out of malice. During this discussion, we will present David with a copy of our executed "physician agreement."  As you can imagine, we are all new to this situation and would like to avoid any pitfalls. We would like to present this in a clear, yet nonthreatening manner. Would you advise that we present him with a summary of his obligations in order to clarify some of these points?

Dkt. No. 21-14 at 1–2.  A few hours later, Polisky responded, "Attached is an executed copy of the LLC Agreement, which incorporates the schedule into Section 15.1 . . . I modified the bottom margin to make the schedule fit on 1 page.  I recommend that you present David with a summary of his obligations.  Please let me know if you need me to prepare that."  Dkt. No. 21-15 at 1.  The "executed" LLC Agreement is dated August 11, 2015, and purports to have been contemporaneously signed by Dr. John and the other Oahu Group members.  Dkt. No. 21-15 at 3, 26–30.

Dr. John alleges, however, that Polisky prepared and back-dated this "counterfeit" or "execution copy" of the LLC Agreement by adding various terms into the August 9, 2015 draft LLC Agreement and affixing Dr. John's signature page from another document, all without Dr. John's knowledge or consent.  Dkt. No. 21-2, ¶¶ 24–26, 45; Dkt. No. 1-2, ¶¶ 41–47, 75.

Later that day (August 16, 2016), Polisky sent the four other Oahu Group members the following message via e-mail: "In thinking about this further, I represent Tanya [Florin] rather than any physician, [the Oahu Group], or any of [the Oahu Group]'s members."  Dkt. No. 21-24 at 7.  Less than one hour later, Polisky added, "I represent [the Oahu Group], not any of you individually. I am uncomfortable having the draft letter sent to David [Dr. John], and I should not interface with him on your behalf.  I recommend that you work this out amicably with David. You can use the following bullet points without attributing them to me." Dkt. No. 21-24 at 10.

On August 18, 2016, the other members of the Oahu Group confronted Dr. John with the "execution copy" of the LLC Agreement and told him that he could not withdraw as a member of the Oahu Group and would be responsible for his share of overhead expenses through the year 2022.  Dkt. No. 21-2; ¶ 27; Dkt. No. 1-2, ¶¶ 47, 51.

Throughout these events, Dr. John and DJI, as well as each of the other members of the Oahu Group, paid a pro rata share of Polisky's invoices for the legal services he provided.  Dkt. No. 21-2, ¶¶ 9–11, 29.  As President of DJI, Dr. John's understanding was that Polisky represented DJI as its attorney.  Dkt. No. 21-2, ¶ 31; Dkt. No. 1-2, ¶¶ 57–60.  Dr. Chung likewise testified that it was his "understanding that the five [members] were clients of Mr. Polisky."  Dkt. 21-20 at 36.

## C.    The State Court Lawsuit

On November 17, 2016, the four other members of the Oahu Group sued DJI in Hawaii state court for breach of the LLC Agreement, claiming that DJI was required to pay its share of future operating costs (the "State Lawsuit").  Dkt. No. 21-12, ¶¶ 69, 72; *cf.* Dkt. No. 1-2, ¶ 52.  The dispute ended in a settlement and, on April 3, 2020, the court entered a stipulation to dismiss all claims and parties with prejudice.[1]  Dr. John alleges the entire lawsuit was based on the "counterfeit" LLC Agreement Polisky created.  Dkt. No. 21-2, ¶ 28; Dkt. No. 1-2, ¶¶ 53, 72.  Dr. John learned of this through the e-mails and documents produced during discovery.  Dkt. No. 1-2, ¶ 56.

---

[1]*See Deryll U. Ambrocio, M.D., Inc., v. David John, M.D., Inc.,* No. 1CC-16-1002115 (Haw. 1st Cir. Apr. 3, 2020).

### D.    Procedural History

On January 3, 2020, DJI filed this lawsuit against Polisky in Hawaii state court, *see* Dkt. No. 1-2, alleging that Polisky conspired with the other Oahu Group members to fabricate a "counterfeit" LLC Agreement, which did not include a clause permitting DJI to withdraw from the Oahu Group on six months' notice and formed the basis for the state court lawsuit against DJI.  As a result, DJI incurred attorneys' fees and other damages in excess of $500,000.  *See* Dkt. No. 1-2, ¶¶ 53, 70, 72, 75, 80; Dkt. No. 21-2, ¶ 28.

In the complaint, DJI asserts thirteen counts: (1) strict liability; (2) forgery; (3) fraud and breach of fiduciary duty; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) unfair competition in violation of Haw. Rev. Stat. § 480-1 *et seq.*; (7) legal malpractice; (8) failure to warn; (9) liability based on *Uyemura v. Wick*, 551 P.2d 171, 176 (Haw. 1976); (10) "prima facie tort"; (11) punitive damages; (12) breach of contract; and (13) breach of the implied covenant of good faith and fair dealing.  *Id.* at ¶¶ 80–93.

On January 31, 2020, Polisky timely removed the case to federal court based upon diversity of citizenship under 28 U.S.C. § 1332.  *See* Dkt. No. 1.  Polisky now asks the Court to transfer this case to the Central District of California based upon lack of personal jurisdiction and improper venue.  Dkt. No. 6.  Polisky's motion has been fully briefed by all concerned and is now ripe for resolution.

## STANDARD OF REVIEW

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.* (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).

In evaluating the evidence, "uncontroverted allegations in [the] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff]'s favor." *Brayton Purcell*, 606 F.3d at 1127 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)). But when a complaint and an affidavit conflict, the "plaintiff cannot 'simply rest on the bare allegations of its complaint,'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)), because courts do "not assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.* (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *CollegeSource*, 653 F.3d at 1073.

# DISCUSSION

Polisky presents two principal issues in his motion. First, Polisky argues this Court lacks personal jurisdiction over him. Dkt. No. 6-1 at 6. Second, Polisky contends that this venue is improper, and the case should be transferred to the Central District of California pursuant to 28 U.S.C. Section 1404(a). *Id.* at 6, 21–23. As set forth below, both contentions are unavailing.

## I.   Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed.R.Civ.P. 4(k)(1)(A)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Hawaii's long-arm statute authorizes its courts to exercise personal jurisdiction "to the extent permitted" by the United States Constitution. *See Cowan v. First Ins. Co.*, 608 P.2d 394, 399 (Haw. 1980) (citing Haw. Rev. Stat. § 634-35); *accord In re Complaint of Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 679 (9th Cir. 1990). Therefore, the Court must decide whether exercising jurisdiction over Polisky "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). As relevant

here,[2] courts may exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Depending on the defendant's affiliations with the forum, courts may exercise "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017) (quoting *Goodyear*, 564 U. S. at 919).

General jurisdiction over a defendant is appropriate only when the defendant's affiliations with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U. S. at 919).  "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State," *Bristol-Myers*, 137 S. Ct. at 1780, or the claim "aris[es] from dealings entirely distinct from" the defendant's activities within the forum.  *Daimler*,

---

[2]DJI does not argue that service of process was effectuated while Polisky was physically present in Hawaii, *Burnham v. Superior Court of Calif.*, 495 U.S. 604, 628 (1990) (plurality opinion); that Polisky waived or consented to personal jurisdiction, *see InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 901 (9th Cir. 2018); or that Polisky is a Hawaii domiciliary who is merely physically absent at times, *see, e.g.*, *Milliken v. Meyer*, 311 U.S. 457, 463–64 (1940).

571 U.S. at 127 (quoting *Int'l Shoe*, 326 U.S. at 318).  By contrast, a court may exercise specific jurisdiction where a nonresident has only engaged in "some single or occasional acts" in the forum, *Daimler*, 571 U.S. at 137 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408, 414 n.8 (1984)), but "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*."  *Bristol-Myers*, 137 S. Ct. at 1780 (citation and internal quotation marks omitted; emphasis in original).

Here, DJI argues the facts alleged are sufficient to support both general and specific jurisdiction over Polisky.  *See* Dkt. No. 21 at 7–8, 10.  Only the latter is true.

### A.     General Personal Jurisdiction

This Court lacks general personal jurisdiction over Polisky because his contacts with Hawaii are not so "continuous and systematic" that he is "essentially at home" in Hawaii.  *Daimler*, 571 U.S. at 127.   "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence."  *See id.* at 1172; *CollegeSource*, 653 F.3d at 1074.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile . . ." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U. S. at 924).

DJI points to Polisky's relationship with the members of the Oahu Group and three other retainer agreements that Polisky executed with Hawaii residents, dating back to 2012.[3]   From this evidence, DJI makes a cursory argument that these "documents illustrate additional grounds for general jurisdiction based on multiple contacts and Polisky's rampant unauthorized practice of law in Hawaii."  Dkt. No. 21 at 7–8.

DJI has not cleared the "high" bar to establish general jurisdiction.  It is undisputed that Polisky is domiciled in California, not Hawaii.  Dkt. No. 1, ¶ 3; Dkt. No. 6-4, ¶¶ 1, 13; Dkt. No. 1-2, ¶ 2.[4]  Moreover, Polisky has no offices or staff in Hawaii, he is not licensed in the state, and he does not solicit business in the state. *See, e.g.*, *Bancroft*, 223 F.3d at 1086.  The mere fact that Polisky provided legal services to a handful of Hawaii clients dispersed over a span of several years does not begin to approach "substantial, continuous, and systematic contacts" so as to establish general jurisdiction.  *See CollegeSource*, 653 F.3d at 1074–76 (no general jurisdiction despite misappropriating catalogs, marketing services, and serving three

---

[3]*See* Dkt. No. 21-26 at 1, 8, 14.
[4]*Cf. Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.")

hundred registered users and two paid subscribers in the forum); *Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *see also Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (no general jurisdiction over natural person who had relationships with forum banks and law firms, owned an apartment in the forum, and "spent fewer than 5% of nights" in the forum during a 31-month period).

Accordingly, DJI has not made a prima facie showing that Polisky is subject to general personal jurisdiction in Hawaii.

## B.    Specific Personal Jurisdiction

Polisky is subject to the Court's specific personal jurisdiction because the claims alleged arise out of Polisky's contacts with Hawaii.  For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "[P]hysical presence in the forum is not a prerequisite to jurisdiction," but "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Id.* at 285 (citations omitted).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler*

*Magazine, Inc.*, 465 U. S. 770, 775 (1984) (internal quotation marks omitted)).  Two

overarching principles drive this "defendant-focused" inquiry.  *Id.* at 284.

> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State.  *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985). . . .  Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated."  *Rush v. Savchuk*, 444 U. S. 320, 332 (1980).

> Second, [the] "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 571 U.S. at 284–85.  In other words, specific jurisdiction cannot obtain based

upon "a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral

activity' of a plaintiff."  *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U. S. at

475).  With these principles in mind, courts in this jurisdiction evaluate specific

jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  "The

plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.  If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King*, 471 U.S. at 476–78).  Analyzing each prong *seriatim*, Polisky is subject to specific personal jurisdiction in Hawaii.

### 1.    Purposeful Availment or Purposeful Direction

The first prong of the test for specific jurisdiction may be satisfied by showing that the defendant either (1) "purposefully availed" himself of the privilege of conducting activities in the forum; or (2) "purposefully directed" his activities at the forum."  *See, e.g.*, *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  These two terms "are, in fact, two distinct concepts."  *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).  "The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue."  *Boon Global Ltd. v. United States Dist. Court* (In re *Boon Global, Ltd.*), 923 F.3d 643, 651 (9th Cir. 2019) (quoting *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).  "For claims sounding in contract, a purposeful availment test is used; for claims sounding in tort a purposeful direction test is used."  *Id.*; *see, e.g.*, *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605–06 (9th Cir. 2018) (discussing Ninth Circuit case law to "clarify" that the "purposeful direction" or "effects" test applies to intentional tortious conduct "that takes place *outside* the forum state and that has effects inside the forum state").

Because DJI asserts both contract *and* tort claims, both tests are at issue. Dkt. No. 1-2 at ¶¶ 80–93. "If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). As set forth below, DJI's allegations satisfy the "purposeful direction" test.

### a. Purposeful Availment for Contract Claims

Polisky's relationship with the Oahu Group does not amount to purposeful availment. In Counts 12 and 13, DJI asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Dkt. 1-2, ¶¶ 57, 92–93. The absence of a written contract between DJI and Polisky is not dispositive.[5] To the extent there is an implied attorney-client relationship or "purported oral contract," *see Picot*, 780 F.3d at 1212, the question is simply whether Polisky "purposefully avail[ed] [himself] of the privilege of conducting activities within [Hawaii]," *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), by virtue of that implied attorney-client relationship or "purported oral contract," *see Picot*, 780 F.3d at 1212.

---

[5]The only written attorney-client contract here is the retainer agreement that Polisky and Florin executed, Dkt. No. 6-5; Dkt. No. 6-4, ¶ 5, and DJI cannot overcome this fact by simply relying on allegations in the complaint. *See Mavrix Photo*, 647 F.3d at 1223.

"[T]he formation of a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Burger King*, 471 U.S. at 478). Rather, a defendant must have engaged in "affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212 (citation and internal quotation marks omitted). To that end, courts look to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 479).

As relevant here, in *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), the Ninth Circuit held that "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." *Id.* at 1363. In *Sher*, the plaintiff was arrested in California on federal criminal charges brought in Florida. *Id.* at 1360. With the assistance of a California attorney, plaintiff contacted and retained trial counsel in Florida. *Id.* To secure future payment for the representation, plaintiff executed a deed of trust and a promissory note in favor of the Florida-based law "partnership, encumbering the [plaintiff's] residence in Los Angeles." *Id.* After the plaintiff was ultimately convicted, she filed a legal malpractice suit in California against her Florida

attorneys and their firm because one of the partners did not disclose that he was

under federal investigation.  *Id.* at 1360.  The court reasoned that:

> As normal incidents of [the] representation the partnership accepted
> payment from a California bank, made phone calls and sent letters to
> California. These contacts, by themselves, do not establish purposeful
> availment; this is not the deliberate creation of a "substantial
> connection" with California, nor is it the promotion of business within
> California. For one thing, the business that the partnership promoted
> was legal representation in Florida, not California.  Moreover, the
> partnership did not solicit [plaintiff]'s business in California; [plaintiff]
> came to the firm in Florida. There is no "substantial connection" with
> California because neither the partnership nor any of its partners
> undertook any affirmative action to promote business within California.

*Id.* at 1362.  The court, however, concluded that there was one "significant contact

with California"—the deed of trust—which rendered the law firm, but not the firm's

individual attorneys, subject to personal jurisdiction in California.  *Id.* at 1363–64,

1367.  The deed of trust was significant for two reasons.  First, by executing "a deed

of trust in favor of the partnership, encumbering the [plaintiff's] California home,"

the parties "'contemplated [significant] future consequences' in California . . ." *Id.*

at 1363.    Second, "[t]he representation was contingent upon the execution of the

deed of trust."  *Id.* at 1364.  Thus, personal jurisdiction over the partnership was

appropriate, but the same was not true for the individual partners because they were

not "a beneficiary of the deed of trust; only the partnership was."  *Id.* at 1366.

In contrast to *Sher*, here, Polisky does not hold a deed of trust for property in

Hawaii or have any other comparable "significant contact" with Hawaii beyond the

"normal incidents" of a purported attorney-client relationship.  And Polisky did not solicit or initiate the representation, and he performed all of his legal services from California.[6]  The contacts DJI alleges Polisky had with Hawaii (*e.g.*, telephone calls, e-mails, and receipt of payments) fall in the category of "normal incidents of [the] representation."  *Sher*, 911 F.2d at 1362.  "[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state."  *Boon Global*, 923 F.3d at 653 (citation and internal quotation marks omitted).  Moreover, nothing suggests the legal representation in question "envisioned continuing and wide-reaching contacts" in the forum State akin to the deed of trust in *Sher*.  *See Burger King*, 471 U.S. at 479–80 (20-year franchise agreement)).  As such, Polisky's contacts with Hawaii do not constitute purposeful availment.

Notwithstanding, that is not the end of the jurisdictional inquiry.  DJI alleges intentional, tortious conduct that was not present in *Sher*.  As noted, the Ninth Circuit applies a "purposeful direction" or "effects" test for claims involving an "out-of-state tortfeasor."  *See, e.g.*, *Freestream Aircraft*, 905 F.3d at 604–06; *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (collecting cases).  Polisky, however, argues that the jurisdictional inquiry in this case is limited to the purposeful availment test.  *See* Dkt. No. 23 at 13.  The Court is not persuaded.

---

[6]*See, e.g.*, Dkt. No. 21-3 at 2; Dkt. No. 21-1, ¶ 6; Dkt. No. 6-4, ¶ 4.

Polisky relies principally on *Sher*. *Sher* only engaged in a purposeful availment analysis because it concluded that, "[a]lthough some of [the plaintiff]'s claims sound[ed] in tort," "all" of the plaintiff's claims actually arose out of the plaintiff's "contractual relationship with the defendants." *Sher*, 911 F.2d at 1362. That is not the case here. The lion's share of DJI's claims are intentional torts based on fraud and forgery, conduct that falls well outside the bounds of any contractual relationship.[7] These claims, therefore, must be analyzed under the "purposeful direction" or "effects" test, as set forth below.

In sum, with respect to DJI's claims sounding in contract, DJI has failed to show that Polisky purposefully availed himself of the privilege of conducting business in Hawaii. Accordingly, the Court need not address whether these claims arise out of Polisky's forum-related activities or whether the exercise of jurisdiction would be reasonable. *Picot*, 780 F.3d at 1212 n.2.

### b.   Purposeful Direction for Tort Claims

As explained *supra*, "purposeful direction" is the proper analytical framework for DJI's tort claims. *See, e.g.*, *Picot*, 780 F.3d at 1212. For the reasons that follow, DJI has alleged tortious conduct sufficient to satisfy the "purposeful direction" test for purposes of establishing specific jurisdiction.

---

[7]To be sure, Polisky cannot maintain that he "never represented any of the individual doctors" of the Oahu Group and "never entered into a contractual agreement" with DJI, Dkt. No. 6-4 ¶ 7, and, at the same time, insist that the claims alleged are contractual in nature.

The "purposeful direction" or "effects" test derives from *Calder v. Jones*, 465 U.S. 783 (1984).[8]  *Wash. Shoe*, 704 F.3d at 673.  Under this three-part test, specific jurisdiction exists if the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*)).  All three requirements are met here.

### i.  *Intentional Act*

In this context, defendants commit an "intentional act" when they "perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."   *Wash. Shoe*, 704 F.3d at 673–74 (quoting *Schwarzenegger*, 374 F.3d at 806); *Picot*, 780 F.3d at 1214 (speaking with a person is an intentional act); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (adding logos to a newsletter and sending it are intentional acts); *Bancroft*, 223 F.3d at 1088 (sending a letter is an intentional act).

---

[8]In *Calder*, a California court had specific jurisdiction to hear a suit brought by a California plaintiff where a Florida-based publisher of a newspaper had printed an article allegedly defaming the complaining Californian, and the publisher had its largest circulation in California. 465 U. S. at 785–86, 789–90.  Although defendants argued they did not personally circulate the article themselves in California,  the Supreme Court reasoned that defendants' "intentional, and allegedly tortious, actions were expressly aimed at California," and "based on the 'effects' of their Florida conduct in California," they "must 'reasonably anticipate being haled into [a California] court'" where their "intentional conduct in Florida [was] calculated to cause injury to [the plaintiff] in California."  *Id.* at 789–91 (citations omitted).

Here, Polisky committed several intentional acts when he allegedly (i) conspired with the four other Oahu Group members to fabricate a "counterfeit" LLC Agreement; (ii) added various terms to the August 9, 2015 draft LLC Agreement; (iii) affixed a signature page of Dr. John's from another document; (iv) back-dated this "counterfeit" LLC Agreement; and (v) sent the "counterfeit" LLC Agreement to the four other members of the Oahu Group in Hawaii for use in their negotiations with Dr. John.  *See, e.g.*, Dkt. No. 21-2, ¶¶ 24–26, 45; Dkt. No. 21-15 at 1; Dkt. No. 1-2, ¶¶ 41–47, 53, 70, 72, 75.

### ii.   *Express Aiming*

DJI's allegations satisfy the second prong of the "effects" test, "express aiming," in that Polisky's tortious conduct was "expressly aimed at the forum." *Picot*, 780 F.3d at 1214 (citation omitted).  Following the Supreme Court's decision reversing the Ninth Circuit in *Walden v. Fiore*, 571 U.S. 277 (2014), the fact that a defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state," standing alone, is no longer sufficient to support the exercise of specific jurisdiction.  *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) (quoting *Wash. Shoe*, 704 F.3d at 675).  Here, there is more.

In *Walden*, a Georgia police officer working as a deputized DEA agent seized $97,000 in cash from two professional gamblers in a Georgia airport and later helped

draft an allegedly false affidavit to show probable cause for the seizure, which the officer then sent to a U.S. Attorney's Office in Georgia.  571 U.S. at 279–81.  The gamblers, residents of California and Nevada, filed suit against the Georgia officer in Nevada, alleging violations of their Fourth Amendment rights.  *Id.* at 280–81.  The Supreme Court held that the officer was not subject to personal jurisdiction in Nevada.  *Id.* at 291.  The officer's conduct was not directed at Nevada, the Court reasoned, "simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."  *Id.* at 289–90.  The Court observed that the officer "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."  *Id.* at 288–89.  The Court further concluded that the specific injury the gamblers allegedly experienced in Nevada was insufficient to create jurisdiction there.  *Id.* at 289–90.  In reaching that conclusion, the Court distinguished *Calder* on the grounds that the gamblers' lack of access to their seized funds "is not the sort of effect that is tethered to Nevada in any meaningful way" because they "would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had."  *Id.* at 291.

Here, unlike in *Walden*, DJI is not "the only link between [Polisky] and the forum."  571 U.S. at 285, 291.  Rather, everything about Polisky's alleged conduct was aimed directly at Hawaii itself, not merely a resident of Hawaii.  In particular,

Polisky conspired with Hawaii residents to fabricate the counterfeit LLC Agreement; Polisky himself was the one who requested that the other Hawaii members send him the "signature pages" and the block schedule from Hawaii that Polisky allegedly added to the August 9, 2015 draft LLC Agreement;[9] Polisky sent the counterfeit LLC Agreement to his co-conspirators in Hawaii;[10] the counterfeit LLC Agreement established a Hawaii LLC that would operate solely in Hawaii; all of the members of the LLC were, at the time, residents and citizens of Hawaii; by virtue of Polisky's tortious conduct, Polisky tied DJI (a Hawaii corporation) to a Hawaii LLC, thereby causing DJI to incur obligations in Hawaii, such as operating expenses and lease payments for property in Hawaii; and Polisky's tortious conduct was calculated to facilitate the means for the four other members of the Oahu Group to file the State Lawsuit against DJI in Hawaii if Dr. John (as DJI's president) did not "work cooperatively" and continue paying for the Oahu Group's expenses or find a replacement to do so.[11]  The place where Polisky compiled and fabricated the LLC Agreement (California) is the only aspect of this case that does not involve Hawaii. Put simply, "[Hawaii] is the focal point both of the [counterfeit LLC Agreement] and of the harm suffered."  *See Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 789).

---

[9]*See* Dkt. No. 21-20 at 96–97; Dkt. No. 21-24 at 1.
[10]Dkt. No. 21-15 at 1.
[11]Dkt. No. 21-24 at 1.

In sum, Polisky's intentional tortious conduct was "expressly aimed" at Hawaii in such a way that it "connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

### iii.    *Foreseeable Harm*

The third element of the "purposeful direction" test is satisfied because Polisky's alleged fabrication of the counterfeit LLC Agreement inflicted harm that Polisky knew was "likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206.   "This element is satisfied when [a] defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell*, 606 F.3d at 1131 (quoting *Bancroft*, 223 F.3d at 1087).  As relevant here, the Ninth Circuit has "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource*, 653 F.3d at 1079 (collecting cases); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113–14 (9th Cir. 2002) (involving corporate plaintiff's claims for fraud and deceit, conspiracy, constructive fraud, breach of fiduciary duty, and conversion).

Here, at all relevant times, DJI's principal place of business was Hawaii.  *See* Dkt. No. 1-2, ¶ 1; Dkt. No. 21-2, ¶ 2.  As a result of Polisky allegedly affixing Dr. John's signature to the counterfeit LLC Agreement without his consent, DJI became contractually obligated to the Oahu Group in Hawaii, and the other members used the forged instrument to file suit against DJI in Hawaii.  This harm was not only

foreseeable, it was contemplated and deliberately carried out.  To the extent DJI may have also suffered harm elsewhere, "the 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  *Yahoo!*, 433 F.3d at 1207.  Therefore, the Court concludes DJI's allegations are sufficient to satisfy the third prong of the "purposeful direction" test.

### 2.    Claims Arising out of, or Related to, Forum Activities

Under the second prong of the specific jurisdiction test, a "but for" test applies, meaning "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action."  *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 742 (9th Cir. 2013) (citations and internal quotation marks omitted).  Contrary to Polisky's protestations, this requirement is unquestionably met here.  "But for" the counterfeit LLC Agreement Polisky fabricated for the other members of the Oahu Group and sent to the forum state for use in the forum state, the tort claims DJI alleges would not exist.  *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (holding that plaintiffs would not have suffered harm but for law firm's paralegal inquiring into their credit reports).

### 3. Reasonableness

Because DJI has alleged sufficient facts to support the exercise of specific personal jurisdiction, the question becomes whether Polisky has satisfied his burden of presenting a "compelling case that the presence of some other considerations would render jurisdiction [in Hawaii] unreasonable" so as to violate due process. *Freestream Aircraft*, 905 F.3d at 607 (citation omitted) (quoting *Burger King*, 471 U.S. at 477); *Sher*, 911 F.2d at 1365.  In evaluating reasonableness, seven factors must be balanced: (1) the extent of Polisky's purposeful interjection into the forum state's affairs; (2) the burden on Polisky of defending in the forum; (3) the extent of conflict with the sovereignty of Polisky's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to DJI's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Freestream Aircraft*, 905 F.3d at 607. Polisky addresses all but the third and fourth factors, Dkt. No. 6-1 at 18–21, ultimately evidencing his inability to carry his burden.

The first factor weighs in favor of DJI because actions that satisfy the "purposeful direction" test also constitute "purposeful injection."  *See, e.g.*, *CollegeSource*, 653 F.3d at 1080; *Myers*, 238 F.3d at 1075.

The second factor is at least neutral because "with the advances in transportation and telecommunications and the increasing interstate practice of law,

any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *CollegeSource*, 653 F.3d at 1080 (quoting *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007)).  Polisky resides in California and has counsel resident in Hawaii.  The burden of defending himself here is nominal.

The third factor favors DJI because this case merely involves a citizen from a sister state, not a foreign national, *see Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003), and any potential conflict between the laws of Hawaii and California regarding the conduct of an attorney is of no concern in this case, *see Freestream Aircraft*, 905 F.3d at 608.

The fourth factor weighs in favor of DJI.  Hawaii has a strong interest in adjudicating fraud, and other torts, against its residents and incorporated businesses, particularly where its state courts have been used to perpetuate such fraud.  *See id.*; *Harris Rutsky*, 328 F.3d at 1133; *Dole*, 303 F.3d at 1116.

The fifth factor weighs in favor of DJI because most of "the witnesses and the evidence are likely to be located" in Hawaii.  *Freestream Aircraft*, 905 F.3d at 609 (citations and internal quotation marks omitted).

The sixth factor (the convenience and effectiveness of relief) favors DJI or is, at the very least, neutral in light of the fact that DJI is a Hawaii corporation. Although Dr. John himself now resides in Missouri, "plaintiff's convenience is not

of paramount importance." *Dole*, 303 F.3d at 1116; *Freestream Aircraft*, 905 F.3d at 609.

With respect to the seventh factor, DJI bears the burden of proving "the unavailability of an alternative forum," *Freestream Aircraft*, 905 F.3d at 609, but has not offered any argument on the issue.  Dkt. No. 21 at 20.   "The mere existence of an alternative forum, however, cannot possibly satisfy [Polisky]'s burden to present a compelling case that jurisdiction is unreasonable." *Myers*, 238 F.3d at 1075.

The *Burger King* factors, on balance, militate in DJI's favor, or, at best, the balance is "a wash." *Freestream Aircraft*, 905 F.3d at 609 (citation omitted). Therefore, Polisky has failed to make a compelling case that exercising personal jurisdiction over him would be so unreasonable as to violate due process.

In short, DJI has alleged sufficient facts to support the exercise of specific personal jurisdiction over the intentional tort claims alleged against Polisky because Polisky "purposefully directed" his tortious conduct at the forum state of Hawaii. The Court exercises its pendent personal jurisdiction over all of DJI's other claims against Polisky, including those sounding in contract, because the claims arise out of the same "common nucleus of operative facts" as DJI's intentional tort claims. *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery*, 368 F.3d at 1181).  Moreover, it cannot be said that the maintenance of this suit would "offend traditional notions

of fair play and substantial justice." *Goodyear*, 564 U.S. at 923 (quoting *Int'l Shoe*, 326 U.S. at 316). On the contrary, there would be no fair play and no substantial justice if it were otherwise. When a nonresident attorney engages in deliberate, fraudulent and tortious conduct calculated to cause harm to a plaintiff in the forum state, that attorney cannot claim foul-play when he is haled into a court within the forum state. Because Polisky is alleged to have engaged in such conduct, and because the Court must resolve any factual disputes in DJI's favor, Polisky is subject to the Court's specific personal jurisdiction.

## II.   Transfer of Venue Under 28 U.S.C. § 1404(a)

Having concluded that Polisky is subject to the Court's specific jurisdiction, Polisky's only other argument is that venue is improper under 28 U.S.C. Section 1391(b)(2), and therefore, the case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). Dkt. No. 6-1 at 21–23. Neither contention has merit.

Under 28 U.S.C. Section 1391(b)(2), venue is proper in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. In a tort action, "the locus of the injury" is a relevant factor. *Myers*, 238 F.3d at 1076. In *Myers*, venue was proper because "at least one of the 'harms' suffered by Plaintiffs . . . was felt in [the forum state]." *Id.* As explained above, the alleged harm here occurred in Hawaii by virtue of Polisky allegedly fabricating an

LLC Agreement that made DJI (a Hawaii corporation) a member of a Hawaii LLC, thereby imposing on DJI obligations in Hawaii and facilitating a lawsuit in Hawaii for breach of those obligations.  Accordingly, venue is proper.

Even where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice," a district court has discretion to transfer a case "to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  That determination is made based upon "an individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2001) (quoting *Stewart*, 487 U.S. at 29).  Relevant factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99.  In addition, the existence of "a forum selection clause is a 'significant factor'" and "the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing."  *Id.* at 499 (citations omitted).

Here, Polisky has failed to meet his burden of showing that the Central District of California is a more appropriate forum.  *Id.*; *see also Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011).  Factors three, four, five, and eight

weigh in favor of DJI for the same reasons explained above with respect to the "reasonableness" of exercising personal jurisdiction.  Although, as Polisky notes, his retainer agreement contains a forum selection clause requiring arbitration in California, Dkt. No. 23 at 13; Dkt. No. 6-5 at 4, DJI is not a signatory to that retainer agreement, and Polisky has consistently maintained that he "did not represent Plaintiff" and "his contractual agreement was with Florin, alone."  Dkt. No. 6-1 at 23.  Moreover, in light of the fact that all of the relevant witnesses (other than the parties) are residents of Hawaii, there will be inherent difficulties compelling these witnesses to testify elsewhere and certainly at greater cost.[12]  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1119 (9th Cir. 2007) (transferring case from California to Hawaii where the "most potential witnesses resided in Hawaii and Japan").  Further, "[Hawaii] has an interest in protecting its citizens against legal malpractice," as well as fraud, "regardless of where the malpractice occurs."  *See Sher*, 911 F.2d at 1364.

Therefore, considerations of "convenience and fairness" dictate that Hawaii is an appropriate forum to resolve this dispute.

---

[12]Under Fed.R.Civ.P. 45(c)(1), a person may only be commanded to attend a trial, hearing, or deposition within 100 miles of where the person resides or anywhere within the same state where the person resides or is employed.

## CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss for lack of personal jurisdiction and improper venue, Dkt. No. 6, is DENIED.

IT IS SO ORDERED.

DATED: May 14, 2020 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

_David John, M.D., Inc. v. Robert A. Polisky_; Civil No. 20-00049-DKW-RT;
**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**